Marjorie Saunders WATTENBURGER et al., Appellants,

v.

Frank MORRIS, Jr., et al., Ex. and Tr., Appellees.

No. 16971.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 6, 1968.

Rehearing Denied Jan. 17, 1969.

Stark & Underwood, and Richard S. Stark, Gainesville, for appellants.

John Atchison, and Ray Winder, Gainesville, for appellees Frank Morris, Jr., and Claude Jones, as executors and trustees.

Sullivant & Harris, Gainesville, McDonald, Sanders, Wynn, Ginsburg, Phillips & Maddox, and Atwood McDonald, Fort Worth, for appellees L. H. Saunders, Jr., Mary Jo Bullard and husband Ralph Bullard, Marie Saunders, Nancy Saunders and Vera Gertrude Saunders.

## OPINION

MASSEY, Chief Justice.

Owen Saunders, Sr., often to be referred to as the testator, died testate on August 29, 1960. By an original will executed August 21, 1944, he had made material provisions for the benefit of his three sons, Owen T. Saunders, Blackwood Saunders, and L. H. Saunders. Concerning the provisions therein made, particularly as applied to his reasons for burdening the inheritance of his three sons by placing the real estate in trust for them for 25 years after the date of his death, and the money in trust for them for 20 years, he stated that he was "persuaded that it is wise to so limit the disposition thereof as to assure them and each of them a competency in their old age, realizing that those who become the beneficiaries of property without having earned it usually do not appreciate its real value and are less likely to manage it in a wise and prudent manner."

Alleged date of Owen T. Saunders' death was November 29, 1951. He was

one of the three sons of the testator, for whose benefit the testator had left real property and money in trust by will. August 24, 1954 the testator executed a codicil, one reason therefor being that Owen T. Saunders was dead, leaving three children surviving. They were Marjorie Saunders, Joyce Saunders, and Owen T. Saunders, Jr.

The material language of the August 24, 1954 codicil read:

"1. Since the making of my said will (reference made was to original will) certain conditions have changed and it is my desire, in lieu of all bequests, devise or other benefits whatsoever which my grandchildren, Owen Thomas Saunders, Margie Saunders and Joyce Saunders, would or could have under my said will and testament, to bequeath to my grandchildren, Owen Thomas Saunders, Margie Saunders and Joyce Saunders, being the children of my deceased son, Owen Saunders, Two Thousand Dollars each."

The executors named by Owen Saunders' will were Frank Morris, Jr., et al. They were also named trustees to hold, manage and control the realty for 25 years and the money for 20 years.

As Morris, et al. interpreted the will they deemed it their duty as trustees to manage the estates of which they acted as trustees for the periods prescribed, for the use and benefit of Blackwood and L. H. Saunders (Owen T. Saunders having predeceased the testator, and the codicil aforementioned having been thereafter executed). They deemed it their duty, as executors of the will, to pay to each of the grandchildren who were the children of Owen T. Saunders (who had died before his father, the testator) the $2,000.00 prescribed in the codicil previously mentioned —and from which we have quoted. After qualifying before the Probate Court they did pay $2,000.00 to each of said grandchildren in the latter part of the year 1960.

Before making payment of the several $2,000.00 bequests the executors of the will required the execution and delivery by each grandchild of a purported release. Each such read substantially, as follows:

"Now comes (beneficiary named) and acknowledges receipt of the sum of $2,000.-00 in full payment of the bequest to the said (beneficiary named) contained in the last will of Owen Saunders, Sr., deceased, and in consideration thereof hereby releases said estate from any and all claims of every kind whatsoever."

It is not a matter of dispute in the case —and may be accepted as fact—that each grandchild, Owen Thomas Saunders, Marjorie Saunders Wattenburger and Joyce Saunders Lankford (together with the husbands of Marjorie and Joyce) were "on notice" of the testator's provisions by the will and codicils thereto as of the times each executed the purported release form.

A little less than five (5) years after the testator's death, his son, L. H. Saunders, died intestate—as of May 7, 1965, leaving as his only heirs his widow, Marie, and his two children, L. H. Saunders, Jr. and Mary Jo Saunders Bullard.

A little more than five (5) years after the testator's death, his son, Blackwood Saunders, died testate—as of November 24, 1965, leaving as his only heirs his widow, Gertrude, and his only child, Nancy Saunders.

■ Though the original pleadings— filed November 18, 1966, in the District Court of Cooke County—did not present the executor's/trustee's petition for declaratory judgment in the regular form we have no doubt but that the state of all the pleadings in the case properly invoked the jurisdiction of the court to render the judgment it did render as of trial date beginning February 19, 1968. We so hold.

By the judgment the court, among other things found and declared:

That the second codicil to the will revoked the provisions of the original will in favor of Owen T. Saunders and that the widow and children of L. H. Saunders, deceased, and the widow and child of Black-

wood Saunders, deceased, are the only persons—parties to the suit—who have any right, title, or interest in or any claim against the estate of Owen Saunders, Sr.; that the real estate trust and the money trust created by the will of said testator terminated on November 24, 1965 when Blackwood Saunders died, he being the last surviving son of the testator; that the property at that time remaining, and in trust, vested in the widows and children of L. H. and Blackwood Saunders, both deceased, subject to the winding up and closing of the trusts; and that in the winding up and closing of the trusts the trustees have authority to sell and convey real estate and perform all reasonably necessary functions and are allowed a reasonable time within which to act. Further declarations concerned amounts from the trusts to which the trustees were entitled as fees and for expenses, including legal fees, necessarily incident to suit and for the management and handling of the trust estates, plus amounts awarded as attorneys' fees to pay named guardians ad litem appointed by the court in behalf of interested minor children who were made parties to the suit.

To said judgment and decree an appeal was taken by the three children of Owen T. Saunders, deceased, and/or the children of his children, as lineal descendants and heirs entitled to share in the estate of Owen Saunders, Sr. who died August 29, 1960.

We affirm the judgment.

■■■ Three important questions are encountered in connection with the determination of whether the lineal descendants and heirs of Owen T. Saunders, who died in 1951 prior to the death of Owen Saunders, Sr. on August 29, 1960:

(1) Whether they were eliminated as being entitled to anything under the will in question other than the $6,000.00 ($2,000.00 for each of the three children of Owen T. Saunders) because of language in the codicil of August 24, 1954. We have concluded, and therefore hold, that the language of the codicil revoked the bequests con-

tained in the original will (of August 21, 1944) in favor of Owen T. Saunders.

(2) In connection therewith it is of importance that consideration be given to the question of whether the language of the codicil in question be held to be mandatory rather than precatory. We have concluded, and therefore hold, that the language should be construed as mandatory.

(3) But, in the event we err in construing the language to be mandatory—and assuming such to have been precatory, whether the children of Owen T. Saunders, deceased, are precluded from claiming under the original will (of August 21, 1944), either (a) under the theory that in accepting $2,000.00 each (as provided by the codicil of August 24, 1954), and in executing the instruments of release, they released any claims they otherwise might have had under the will, and/or (b) whether they are now precluded from claiming under the will by reason of the doctrine of election of rights and remedies. We have concluded, and therefore hold,—in the assumption that the language of the codicil be properly treated as precatory merely (contrary to our belief)—that they are now precluded from claiming under the will by reason of the doctrine of election of rights and remedies, but should not be held bound under the theory that they had released and settled any claim to which they were otherwise entitled merely because they had executed instruments purporting to be a release.

■■■ Only in the event of error on our part under the foregoing matters, upon which we have stated our holdings, would points of error presented in connection with the trusts and termination thereof become important. If we have correctly decided that the complainants have no further interest in or right to take anything remaining of the estate of the testator they would not be interested in the duration of any trust affecting it nor could they be heard to complain upon the matter. Should we have erred thereupon, and should it be ultimately held that the chil-

dren and lineal descendants of Owen T. Saunders, deceased, are entitled to a proportionate interest in the estate, we are of the opinion, and therefore hold, that the trusts terminated at the times and subject to the rights of the trustees in every respect as determined by the trial court.

■ Where there are codicils to be taken into consideration in a case requiring will construction it is to be presumed in law that the testator has re-examined the testamentary disposition in the original will before executing the codicil; the will and codicil are to be regarded as one instrument, speaking from the date of the codicil; and where it is practically possible to construe the codicil so as to make it consistent with the purposes declared in the body of the will such should be done, it being proper to hold that provision of the codicil would override a will provision and prevail over it only when the provisions can not be reconciled. Boyd v. Frost Nat. Bank, 145 Tex. 206, 196 S.W.2d 497, 168 A.L.R. 1326 (1946); Hinson v. Hinson, 154 Tex. 561, 280 S.W.2d 731 (1955); 61 Tex.Jur.2d, p. 249, "Wills", Sec. 127, "Construction of codicils".

■ The first concern of the court in construing a will is to ascertain the intent of the testator, and the second is to give effect to that intention if not unlawful. A construction of a testamentary provision that has the effect of defeating or thwarting the intention and purpose of the testator, as expressed by the will as a whole, should be avoided. 61 Tex.Jur.2d, p. 266, "Wills", Sec. 145, "Duty of court", and p. 292, Sec. 165, "Defeat of testator's intent".

■ In will construction form should be subordinated to substance and if the testator's intention can be ascertained, from a reading of the whole will, such intention should be given effect, however informal the language. Where, from the context of the will and surrounding circumstances (application to the physical facts) the testator's intention is manifest, though somewhat obscured by an inaccurate mode of expression, the language will be subordinated to the intention. In order to carry out the intention of the testator, as expressed by the whole will, the court will, so far as possible, depart from the strict words, and read a word or phrase in a sense different from that which is ordinarily attributed thereto, and for such purpose may change the language of the will, such as by rejecting superfluous words or restricting them in their application. This rule, of course, only applies where it is necessary in order to effectuate the testator's intention, clearly apparent from the will. The whole scheme of the will should be kept in mind and the will construed from its four corners so as to give effect to the clearly expressed intention of the testator. McMullen v. Sims, 37 S.W.2d 141 (Tex.Com.App., 1931).

The presentation on appeal, made in connection with the contention that the codicil's provision is precatory merely is based upon the use of the word "desire" in the language we have earlier quoted from the codicil of August 24, 1954. We have once stated our opinion and holding that the whole will, including this codicil, should be construed in a manner which would necessitate treating the questioned provision of the codicil as mandatory.

■ In determining whether particular words are to be construed as precatory or mandatory, the court will look to the expressed intent of the testator, as found from the context of the will and surrounding circumstances; and words which are precatory in their ordinary meaning will nevertheless be construed as mandatory when it is evident that such was the testator's intent. Where words of recommendation, request, desire, and the like are used in direct reference to the disposition of the testator's own property and show a clear intent to make such disposition without the intervention of any act by the first donee, they are ordinarily regarded as imperative and testamentary rather than precatory. Further, distinctions have been drawn be-

tween expressions of desire directed to beneficiaries, to executors, and to trustees. A wish directed to a beneficiary is generally regarded as precatory, unless the words clearly express the testator's intention to the contrary; but where the words are addressed to an executor, they are more often regarded as mandatory, or at least prima facie mandatory. 95 C.J.S. "Wills" § 602, p. 801, "(General Principles of Construction—Language of Will) Advisory and Precatory Words, (b) Whether Precatory or Mandatory."

We are referred to two authoritative Texas cases in which language contended to be precatory merely was held to be mandatory in each instance because of and upon its consideration along with the entire will. Bergin v. Bergin, 159 Tex. 83, 315 S.W.2d 943 (1958); Levin v. Fisch, 404 S.W.2d 889 (Eastland, Tex.Civ.App., 1966, ref. n. r. e.).

In our opinion no one could reasonably believe that the testator had any intention other than to make the codicil an effective part of his will, despite his use of the word "desire" therein. If such was his intent it necessarily follows that the questioned provision of the codicil should be deemed mandatory. The testator decided, in view of the death of his son, Owen T. Saunders, to give to his grandchildren, who were the children of the deceased son, the sum of $2,000.00 each, in cash, in lieu of leaving them beneficiaries of the trusts.

■ In said connection we hold that Texas' Anti-Lapse Statute, V.A.T.S., Probate Code, Sec. 68, "Prior Death of Legatee", was inapplicable. By force of Section 68 the children of Owen T. Saunders, deceased, would have stood to inherit under the will to the same extent and by the same manner as would their father, had the testator not executed the codicil after Owen T. Saunders died. It is to be presumed that the testator was aware of the law in this respect, and that his action in executing the codicil was in derogation of rights otherwise existent in his grandchildren but for such action on his part. By the codicil each grandchild was given $2,000.00 "in lieu of all bequests, devise or other benefits whatsoever which my grandchildren, Owen Thomas Saunders, Margie Saunders and Joyce Saunders, would or could have under my said will and testament."

■ We hold that the purported releases that the three children of Owen T. Saunders were required to execute as a condition of their individual rights to receive $2,000.00 in cash upon the death of the testator, and under the provisions of the codicil, were inoperative and without effect as a release of any other right they might have because there was no consideration to support same. However, we hold —as heretofore indicated—that they may not take under the will as it is to be considered apart from and with an absence of provisions thereof as embodied in the codicil because they must be held to have "elected" to take under the codicil "in lieu of" taking under the original will. Where an election is once made by a party bound to elect, with full knowledge of all the facts, his election binds him and those who claim under him though made in ignorance of the law. See cases under 72 A.L.R. 1135 and 28 A.L.R.2d 116, Anno.: "Estoppel to contest will or attack its validity"; 21 Tex.Jur.2d, p. 196 et seq., "Election of Remedies", all sections; Calvert v. Fort Worth National Bank, 348 S.W.2d 19 (Austin, Tex.Civ.App., 1961, affirmed at 163 Tex. 405, 356 S.W.2d 918 (1962)).

The foregoing constitutes a discussion, with holdings indicated, of what we consider to be the material and controlling questions determinative of the appeal. No worthwhile purpose would be served by lengthening the opinion. All points of error have been severally considered and are overruled.

Judgment is affirmed.