02-10-060-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO.  02-10-00060-CV

 

 


 
 
 Estate of Marjorie B. Abshire, Deceased
 
 
  
 
 
  
 
 
 
 
  
  
  
 
 
 
 
  
 
 
  
 
 
  
 
 


 

----------

 

FROM Probate
Court No. 2 OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I. 
Introduction

          In
this action to determine the validity of a holographic will and codicil,
Appellants Ernestine Nichols and Travis Avenue Baptist Church appeal the trial
court’s summary judgment in favor of Appellees Patricia Kallenberger Singleton;
Kent Kallenberger; Kreg Kallenberger; Martha Luvene Bryant Dickinson; Emma Lu
Bryant Magee; Margaret Diane Bryant Gordon; Kinney Bryant; and Jim Dabney, as
Attorney in Fact for Wanza Josephine Thomas Dabney.  Appellants contend in five
issues that the trial court incorrectly interpreted the will and codicil or
that the will and codicil are ambiguous.  Appellants also challenge the trial
court’s award of attorney’s fees to Appellees.  We reverse and remand.

II. 
Background

          Marjorie
B. Abshire passed away on August 30, 2007.  Abshire was Nichols’s maternal first
cousin (their mothers were sisters) and a member of Travis Avenue Baptist
Church.  Appellees are Abshire’s paternal heirs at law. 

          On
January 9, 2001, Abshire drafted, in her own handwriting, a holographic will.  On
January 17, 2001, she added a holographic codicil on the same page.  In their
entirety, the will and codicil state:

6111 Haley Lane

Fort Worth, TX 76132

January 9, 2001

 

To:     Ernestine C.
Nichols

          3820
Westerly

          Fort Worth,
Texas 76116

 

“Holographic Will of
Marjorie B. Abshire”

 

I would like to make
you administrator of my estate to serve as Independent Executor without bond or
other form of security.

 

As of this date,
January 9, 2001, there are no claims for any debt against me – house, car, and
other purchases are free from debt.  The only things I owe are current
utilities and telephone accounts that are drafted from my bank account. *
1/17/01

 

I would like to make
Page Nichols Nickell as alternative Executor with same powers and rights as
Ernestine C. Nichols in case she does not survive me or is incapacitated to act
in my behalf.

 

This will is revoking
all others which have been destroyed.

 

Marjorie B. Abshire

 

*Just as a rough
guide as to distribution of my estate, I would like Ernestine C. Nichols to
have half of my funds, one-fourth to Margaret C. Dennis, and one-fourth to
Travis Avenue Baptist Church which will not include annuities that I have
designated to other charities.

 

Marjorie B. Abshire 

 

On
October 22, 2007, the trial court entered an order admitting the will and
codicil to probate and appointing Page Nickell, named as successor independent
executor in the will, as independent executor.  The document admitted to
probate as the will and codicil were found among Abshire’s financial papers in
an envelope labeled, “Holographic Will of Marjorie Abshire.”  Also in the
envelope were three handwritten notes about making a will, three lists of
assets, and newspaper clippings relating to preparation of wills. 

In
March 2009, Nickell filed an action for declaratory judgment to construe the
will and identified twenty-eight interested parties.  Seven of the Appellees
filed a general denial and have contended that although the will is valid, the
codicil is invalid because it contains precatory language and does not purport
to distribute any portion of Abshire’s estate. 

Appellants
and Appellees filed cross-motions for summary judgment, and the trial court
denied Appellants’ motion and granted Appellees’ motion.  In its order granting
Appellees’ motion for summary judgment, the trial court made four findings:

1.  The purported
codicil dated January 17, 2001, is unambiguous as a matter of law.

 

2.  The following
sentence in the purported codicil is precatory:

 

Just as a rough guide
as to distribution of my estate, I would like Ernestine C. Nichols to have half
of my funds, one-fourth to Margaret C. Dennis, and one-fourth to Travis Avenue
Baptist Church which will not include annuities that I have designated to other
charities.

 

3.  The word “funds”
in the above-quoted sentence does not include real property.

 

4.  The purported
codicil did not make an effective disposition of property.  Therefore, the
decedent died intestate with regard to the disposition of her property. 

 

The
trial court also set aside the portion of its October 22, 2007 order admitting
the codicil to probate.  In its final judgment, the trial court reiterated its
summary judgment findings and awarded attorney’s fees totaling $238,421.49 to
Appellants, Nickell, and Appellees’ attorney, with Appellees’ attorney
receiving $151,498.74 of that amount.  This appeal followed. 

III. 
Standard of Review

We
review a summary judgment de novo.  Travelers Ins. Co. v. Joachim, 315
S.W.3d 860, 862 (Tex. 2010).  We consider the evidence presented in the light
most favorable to the nonmovant, crediting evidence favorable to the nonmovant
if reasonable jurors could, and disregarding evidence contrary to the nonmovant
unless reasonable jurors could not.  Mann Frankfort Stein & Lipp
Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  We indulge
every reasonable inference and resolve any doubts in the nonmovant’s favor.  20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008).

          When
both parties move for summary judgment and the trial court grants one motion
and denies the other, the reviewing court should review both parties’ summary
judgment evidence and determine all questions presented.  Mann Frankfort,
289 S.W.3d at 848; see Myrad Props., Inc. v. Lasalle Bank Nat’l Ass’n,
300 S.W.3d 746, 753 (Tex. 2009).  The reviewing court should render the
judgment that the trial court should have rendered.  Mann Frankfort, 289
S.W.3d at 848.

IV. 
Will Construction

          Appellants
contend in their first three issues that the trial court erred by granting
summary judgment for Appellees.  Specifically, they argue that the trial court
erred by determining that the codicil failed because it contained precatory
language and did not dispose of Abshire’s property and by concluding that the
term “funds” in the codicil did not include real property.  Alternatively,
Appellees contend in their fourth issue that the will and codicil are
ambiguous. 

A. 
Applicable Law

          In
construing a will, the court’s focus is on the testator’s intent.  San
Antonio Area Found. v. Lang, 35 S.W.3d 636, 639 (Tex. 2000); In re
Estate of Florence, 307 S.W.3d 887, 893 (Tex. App.—Fort Worth 2010, no
pet.).  One of the strongest presumptions guiding the interpretation of wills
is the disfavor of any interpretation that would render the testator intestate
as to any part of her estate.  McGill v. Johnson, 799 S.W.2d 673, 676
(Tex. 1990).

Under Texas law,
several presumptions guide the interpretation of wills.  A construction which
would render the decedent intestate as to any part of his estate is not
favored.  If the language used is not free from doubt or ambiguity, then canons
of construction may be resorted to, and that interpretation should be adopted
which will uphold and not destroy the will.

 

Id. (citation
omitted).  “The fact that [a] testatrix left a will implies that she did not
intend to die intestate.”  Ferguson v. Ferguson, 121 Tex. 119, 45 S.W.2d
1096, 1097 (1931); see In re Estate of Rogers, No. 04-06-00555-CV, 2007
WL 1258763, at *2 (Tex. App.—San Antonio May 2, 2007, pet. denied) (mem. op.). 
For this reason, “[a] holographic will should be liberally construed to effect
the testator’s intent.”  Trim v. Daniels, 862 S.W.2d 8, 10 (Tex.
App.—Houston [1st Dist.] 1992, writ denied) (citing Lane v. Sherrill,
614 S.W.2d 619, 622 (Tex. 1981); Gilkey v. Chambers, 146 Tex. 355, 207
S.W.2d 70, 73 (1947)).

The
testator’s intent must be ascertained by viewing the will in its entirety.  Florence,
307 S.W.3d at 893 (citing Steger v. Muenster Drilling Co., Inc., 134
S.W.3d 359, 372 (Tex. App.—Fort Worth 2003, pet. denied)).  If the will is
unambiguous, a court should not go beyond specific terms in search of the
testator’s intent.  Lang, 35 S.W.3d at 639.  “[I]f [the testator’s intent]
can be ascertained from the language of the instrument, then any particular
paragraph of the will which, considered alone, would indicate a contrary
intent, must yield to the intention manifested by the whole instrument.”  Welch
v. Straach, 531 S.W.2d 319, 321 (Tex. 1975) (quoting McMurray v. Stanley,
69 Tex. 227, 6 S.W. 412, 413 (Tex. 1887)).  

Whether
a will is ambiguous is a question of law for the court.  Steger, 134
S.W.3d at 373.  If the court can give a certain or definite legal meaning or
interpretation to the words used, the will is unambiguous, and the court should
construe it as a matter of law.  Id.  A term is not ambiguous merely
because of a simple lack of clarity or because the parties proffer different
interpretations of a term.  Id.  Rather, a will is ambiguous only when
the application of established rules of construction leave its terms
susceptible to more than one reasonable meaning.  Id.  If a will is
ambiguous, extrinsic evidence should be considered to ascertain the testator’s
intent.  Eckels v. Davis, 111 S.W.3d 687, 694 (Tex. App.—Fort Worth
2003, pet. denied).

B. 
Discussion

          The
parties do not dispute that the January 9, 2001 will is valid.  Rather, their
dispute focuses on the validity of the January 17, 2001 codicil.  According to
Appellants, the codicil expresses Abshire’s intent to leave fifty-percent of
her estate to Nichols, twenty-five percent of her estate to the church, and
twenty-five percent of her estate to Dennis.[2]  Appellees contend,
however, that the codicil fails because the language “just as a rough guide, I
would like” is precatory rather than mandatory and fails to dispose of
Abshire’s property.  If the codicil is invalid, Abshire’s entire estate passes
by intestacy, and Abshire’s heirs at law would receive all of Abshire’s estate.

To determine
whether particular words are precatory or mandatory, we look to the testator’s expressed
intent as evidenced by the context of the will and surrounding circumstances, “and
words which are precatory in their ordinary meaning will nevertheless be
construed as mandatory when it is evident that such was the testator’s intent.” 
Wattenburger v. Morris, 436 S.W.2d 234, 239 (Tex. Civ. App.—Fort Worth
1968, writ ref’d n.r.e.).  Thus, although words such as “want,” “wish,” and
“desire” are precatory in their ordinary and primary meaning, “they are often
construed as mandatory when used in a will where it appears from the context or
from the entire document that they are the expression of the testator’s
intention in disposing of his property.”  First United Methodist Church of
Marlin v. Allen, 557 S.W.2d 175, 177 (Tex. Civ. App.—Waco 1977, writ ref’d
n.r.e.) (citing Bergin v. Bergin, 159 Tex. 83, 315 S.W.2d 943, 947
(1958)); see Thomasson v. Kirk, 859 S.W.2d 493, 495 (Tex. App.—Houston
[14th Dist.] 1993, writ denied); Wattenburger, 436 S.W.2d at 239. 
Moreover, a layperson “cannot be deemed to have used words in the same
technical sense that the words might have if they were used by an attorney,”
and “[u]nder such circumstances, it is the duty of the court to make an effort
to determine what was the actual intent of the testator.”  Bergin, 159
Tex. at 88–89, 315 S.W.2d at 946; see Anderson v. Dubel, 580 S.W.2d 404,
409 (Tex. Civ. App.—San Antonio 1979, writ ref’d n.r.e.) (noting that the
testatrix “was an elderly person, not well educated, and not learned in the
law”).

The
disputed codicil states:

Just as a rough guide
as to distribution of my estate, I would like Ernestine C. Nichols to have half
of my funds, one-fourth to Margaret C. Dennis, and one-fourth to Travis Avenue
Baptist Church which will not include annuities that I have designated to other
charities. 

 

Appellees
contend that “just as a rough guide, I would like” is precatory, imposes no
obligation, and is not an affirmative command or direction, and they point to
two cases that hold certain language precatory.  They rely on Huffman v.
Huffman, 161 Tex. 267, 339 S.W.2d 885 (1960), and Haltom v. Austin Nat’l
Bank, 487 S.W.2d 201 (Tex. Civ. App.—Austin 1972, writ ref’d n.r.e.).  But
each of these cases is distinguishable.

          In
Huffman, the relevant portions of the testator’s holographic will
stated:  “The Rotary Apts. Inc. stock belonging to me has been handed to Myrtle
and Lyter for what I lost them in the oil deal. . . . Please give part of the
Rotary Apts. Income to Pat.”  161 Tex. at 270, 339 S.W.2d at 886–87.  The
supreme court held that the will “simply did not bequeath the stock to Myrtle
and Lyter” and that the request to “[p]lease give part of the [apartment]
income to Pat” was “precatory in light of the entire will.”  Id. at
271, 339 S.W.2d at 887 (emphasis added).  In other words, the will stated only
that the stock had been handed to Myrtle and Lyter and did not otherwise
express an intent to bequeath the stock to them upon the testator’s death.  See
id.

          In
Haltom, the testator’s holographic will stated: 

I, Wayman E. Adams,
being of sound mind, will that in case of my death all property of which I am
possessed go to my wife Margaret Boroughts Adams as long as she lives.  And
after her death if it has not been necessary to dispose of it would like our
home at 2815 San Gabriel, Austin[,] Texas be given to the Texas Fine Arts
Association for a small museum.

 

487
S.W.2d at 202.  The court held that the words “would like” were precatory and
not “words of command cloaked in the language of civility.”  Id. at
203.  However, the testator did not, as Abshire did in this case, consistently
use “would like” throughout his holographic will.  Rather, the court stated,
“That Adams knew how to use mandatory words is demonstrated in the first
sentences of the will in which he ‘willed’ that all of his property pass to his
wife for life.”  Id.  Later in the will, however, Adams used the
permissive “would like” when addressing the disposition of his home “if it
ha[d] not been necessary to dispose of it,” leaving discretion to others and
expressing a future gift rather than a present testamentary disposition.  Id.

          In
this case, the will is clearly titled the “Holographic Will of Marjorie B.
Abshire,” and Abshire consistently used the phrase “I would like” throughout
her will and codicil when appointing the executor and alternate executor as
well as when addressing the portions of her estate that named beneficiaries
would receive upon her death.[3]  Read in context rather
than as an isolated phrase, “just as a rough guide, I would like” does not, in
our view, leave the distribution of Abshire’s funds to the discretion of
others.  Rather, the entire will and codicil express Abshire’s testamentary
intent to leave all of her funds, with the exception of annuities designated to
other charities, to three named beneficiaries, with Nichols receiving fifty
percent and the church and Dennis each receiving twenty-five percent.  To the
extent that “just as a rough guide, I would like” arguably leaves discretion to
others, that discretion relates not to whether the named beneficiaries would
receive any portion of the estate but instead to the manner in which the executor
would ensure that the three named beneficiaries receive their respective
percentages.  The codicil is not precatory and expresses Abshire’s intent to
dispose of her property.  See Bergin, 159 Tex. at 89, 315 S.W.2d at 947
(holding that “I want” was not precatory in light of entire instrument); Allen,
557 S.W.2d at 177–78 (holding that “I have willed my home to [the church], but
I want them to let L.D. Moore buy it for $10,000” was not precatory); Wattenburger,
436 S.W.2d at 240 (holding that “it is my desire” was not precatory).  Thus, we
hold that the trial court erred by finding that the codicil was precatory and
did not dispose of Abshire’s property.

We
also hold that, as used in the codicil, the term “funds” is not ambiguous and
includes Abshire’s real and personal property.  This court has previously noted
that “[t]he word ‘funds’ in its broad meaning may include property of any kind”
and that “[t]he expression, ‘funds of an estate,’ used in a will, may mean any
property of a testator.”  Goggans v. Simmons, 319 S.W.2d 442, 445 (Tex.
Civ. App.—Fort Worth 1958, writ ref’d n.r.e.).  Although the phrase at issue in
Goggans involved the residuary clause of the holographic will and the
disposition of the testator’s real property was not at issue, the principle
from Goggans and other cases applies here and requires that Abshire’s
will and codicil be interpreted in a manner that avoids descent by intestacy if
a reasonable construction avoiding descent by intestacy is available.  Id.;
see McGill, 799 S.W.2d at 676 (“A construction which would render the
decedent intestate as to any part of his estate is not favored.”); Trim,
862 S.W.2d at 10 (stating that holographic wills “should be liberally construed
to effect the testator’s intent”).  

Reading
the will and codicil together in their entirety and considering the surrounding
circumstances including the label on the envelope in which they were contained
together with other notes and lists of assets, the intent of Abshire, a
layperson, can be ascertained to be that all of her estate, including real and
personal property but excluding the annuities she had designated to other
charities, pass to Nichols, Dennis, and the church in the designated
percentages.  See Bergin, 159 Tex. at 88, 315 S.W.2d at 946 (stating
that a layperson “cannot be deemed to have used words in the same technical
sense that the words might have if they were used by an attorney”); Anderson,
580 S.W.2d at 409.  If we interpreted “funds” to not include Abshire’s real
property, an additional portion of her estate would pass by intestacy.[4] 
But because “funds” may be reasonably construed in light of the will and
codicil in their entirety to include Abshire’s personal and real property, we
must adopt that construction.  See McGill, 799 S.W.2d at 676.  We hold
that the term “funds” is not ambiguous within the context of Abshire’s will and
codicil and that the trial court erred by finding that “funds” did not include
Abshire’s real property.  We sustain Appellants’ first three issues.[5]

V. 
Attorney’s Fees

          Appellants
contend in their fifth issue that the trial court erred by awarding attorney’s
fees to Appellees.  Civil practice and remedies code section 37.009 permits a
trial court in a declaratory judgment action, in its discretion, to “award
costs and reasonable and necessary attorney’s fees as are equitable and just.” 
Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008).  Given our disposition
of Appellants’ first three issues, we sustain Appellants’ fifth issue and
remand this case so that the trial court may reconsider the recoverability of
attorney’s fees.  See Double Diamond, Inc. v. Saturn, 339 S.W.3d 337,
347 (Tex. App.—Dallas 2011, pet. filed) (reversing declaratory judgment and
remanding for reconsideration of attorney’s fees); Hicks v. Castille,
313 S.W.3d 874, 884 (Tex. App.—Amarillo 2010, pet. denied) (same).

VI. 
Conclusion

          Having
sustained Appellants’ first, second, third, and fifth issues, which are
dispositive, we reverse the trial court’s judgment and remand this case to the
trial court for further proceedings consistent with this opinion.

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER,
MEIER, and GABRIEL, JJ.

 

DELIVERED:  August 18, 2011








 









[1]See Tex. R. App. P. 47.4.





[2]Appellants also point out
that Dennis predeceased Abshire, meaning that the bequest to Dennis failed and
that Abshire’s heirs at law will receive the twenty-five percent bequeathed to
Dennis.





[3]It is not insignificant in
our view that Appellees contest the “I would like” phrase in the codicil but do
not contest the “I would like” phrase in the will that appoints the executor
and alternate executor.





[4]As we noted above, the
devise to Dennis failed because Dennis predeceased Abshire, and the twenty-five
percent bequeathed to Dennis passes to Abshire’s heirs at law.





[5]We do not reach Appellants’
alternative fourth issue in which they contend that the will and codicil are
ambiguous.  See Tex. R. App. P. 47.1.